### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ------------------------------------------------------: | | |
| DAVID GAVLAK AND | : | CIVIL ACTION NO.  3:02CV1410(JCH) |
| HILLSIDE SPRINGS FARM, INC. | : | |
| | : | |
|     Plaintiffs, | : | |
| v. | : | |
| | : | |
| TOWN OF SOMERS AND | : | |
| SOMERS ZONING BOARD OF APPEALS | : | |
| | : | |
|     Defendants. | : | SEPTEMBER 1, 2004 |
| ————————————————— | : | |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

## I.     INTRODUCTION

Plaintiffs David Gavlak and Hillside Springs Farm, Inc., bring this action pursuant to 42 U.S.C. § 1983, alleging that the defendants, Town of Somers (the "Town") and Somers Zoning Board of Appeals (the "ZBA"), violated their federal civil rights.  In particular, plaintiffs allege that the defendants violated their rights guaranteed under the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution by carrying out an alleged "course of conduct, which continues to the present day, designed to obstruct, impede and destroy the business activities of the plaintiffs relating to the harvesting, transportation and sale of natural water . . ." Complaint, ¶9.

372601

The plaintiffs bring this action alleging that, in violation of their equal protection rights, the Town and the ZBA singled them out for harsh treatment. They also allege that, by issuing a cease and desist order against them, the defendants violated their due process rights. Based in part on these unsupported allegations, the plaintiffs seek compensatory damages, punitive damages, and attorneys fees pursuant to 42 U.S.C. § 1988.

The undisputed facts do not support any of these claims. Instead, the evidence reveals that, beginning in June or July 1996, neighbors of the plaintiffs' business operation complained to the Town about the significant truck traffic associated with the plaintiffs' business, which is located in a residential neighborhood. Contrary to the plaintiffs' allegations, their business has never been obstructed; in fact, it has experienced growth and continues operating to this day. The evidence demonstrates the Town and the ZBA had a perfectly legitimate basis for its limited enforcement action against the plaintiffs and that it treated the plaintiffs in a reasonable, rational and fair manner.

On June 12, 2003, the Court, pursuant to the defendants' Motion to Dismiss, dismissed the plaintiffs' claim that their property was taken without just compensation under the Fifth Amendment. The Town and the ZBA now move for summary judgment with respect to plaintiffs' remaining claims for alleged violations of their procedural and substantive due process rights and their alleged equal protection claims.

## II.     FACTUAL BACKGROUND

### A.     The Plaintiffs' Operation of a Water Hauling Business in a Residential Neighborhood Generates Complaints from Residents

Plaintiff David Gavlak is one of the principals of Hillside Springs Farm, Inc.  Complaint, ¶3; Deposition of David Gavlak of 12/19/03 ("Plaintiff's Dep. Tr.") at 46 (Exhibit A).  Since 1991, plaintiffs have leased from Bruce Wood a thirty-three acre parcel on property known as Wood Farm, in Somers, Connecticut, which contains four natural springs.  Wood v. Zoning Board of Appeals, 258 Conn. 691, 693 (2001) (Exhibit B).  The plaintiffs collect water from the springs with pipes, through which the water flows by gravity into tanker trucks (the "Water Operation").  Id.  The water is then transported off the subject property to bottling plants and is sold for, among other uses, human consumption.  Id.  In addition to selling water for human consumption, the plaintiffs have over the years sold water from the site for cattle, for filling residential water wells, for filling swimming pools, and for emergencies.  Plaintiff's Dep. Tr. At 26, 32, 143.

By letter dated December 13, 1996, Mr. Gavlak wrote to Bob Gilmore, indicating that he was filling approximately 40 tankers per week, seven days a week.  Id. at 139.  (Exhibit C).  In his December 13, 1996 letter, Mr. Gavlak estimated that he was removing approximately 37,000 gallons of water per day from the property.  Id.

The subject property is located in an A-1 zoning district. <u>Wood</u>, 258 Conn. at 694. Farms, single-family detached dwellings, multifamily dwellings limited to two units per lot, and utility lines are permitted in an A-1 zone. <u>Id.</u>; <u>see also</u> Somers Town Code 214-98. In approximately June or July of 1996, residential neighbors of Wood Farm began complaining to the Town about the plaintiffs' Water Operation. Plaintiff's Dep. Tr. At 57. Among the neighbors who complained were Roy Slater, Kathy and Peter Klein and George Warner. <u>Id.</u> at 57-58. In particular, the neighbors complained about the truck traffic generated by the plaintiffs' Water Operation in a residential neighborhood. <u>Id.</u> at 58.

Roy Slater was the first neighbor to complain about the truck traffic generated by the plaintiffs' Water Operations. <u>Id.</u> at 34. Mr. Gavlak had been friends with Mr. Slater, Mr. Klein and Mr. Warren, prior to their complaints about the truck traffic caused by the Water Operation. <u>Id.</u> at 62. On September 3, 1996, at a Zoning Commission meeting, these neighbors complained about the truck traffic associated with the Water Operation. <u>Id.</u> In a memorandum dated September 9, 1996, from the Chairman of the Zoning Commission, Lee Hall, to First Selectman Robert Percoski, Mr. Hall addressed the neighbors' traffic concerns. <u>Id.</u> at 65. A copy of Mr. Hall's September 9, 1996 memorandum is attached hereto as Exhibit D.

**B.      The Cease and Desist Order is Issued After Notice and
an Opportunity to Be Heard**

James R. Taylor is the Zoning Enforcement Officer in the Town of Somers and has been so

employed for approximately the past eight (8) years.  Affidavit of James R. Taylor of 8/31/04, ¶3

("Taylor Aff.") (Exhibit E, with attachments 1-3).  On December 2, 1996, at a meeting of the Somers

Zoning Commission, some residents spoke in favor of the plaintiffs' Water Operation and some

spoke against it.  Plaintiff's Dep. Tr. at 67.  At the conclusion of the December 2, 1996 Zoning

Commission meeting, the Commission voted to issue a cease and desist order concerning the

plaintiffs' Water Operation.  Plaintiff's Dep. Tr. at 68.  By letter dated December 30, 1996, Mr.

Taylor issued a cease and desist order regarding the plaintiffs' Water Operation.  Complaint, ¶11;

Plaintiff's Dep. Tr. at 73; Plaintiff's Dep. Exhibit 4.  A copy of the cease and desist order, dated

December 30, 1996, is attached to Mr. Taylor's Affidavit as Exhibit E1.  Id.  A copy of the minutes

of the December 2, 1996 Zoning Commission meeting are attached to Mr. Taylor's Affidavit as

Exhibit E2.  Id.  A copy of the ZBA's Legal Notice, dated July 22, 2003, rescinding the cease and

desist order, is attached to Mr. Taylor's Affidavit as Exhibit E3.  Taylor Aff., ¶9.

The plaintiffs appealed the issuance of the cease and desist order.  Plaintiff's Dep. Tr. at 73.

Although the Town, through Mr. Taylor, issued the cease and desist order, it was not enforced.  Id. at

78-79, 98; see also Taylor Aff., ¶7.  Despite the issuance of the cease and desist order, the plaintiffs'

Water Operation continued uninterrupted.  Plaintiff's Dep. Tr. at 79, 98.  The plaintiffs were never

forced to shut down their Water Operation. Id. While the appeal of the cease and desist order was being litigated, the defendants did not prevent the plaintiffs from engaging in their Water Operation. Plaintiff's Dep. Tr. at 98.

By letter dated February 9, 1997, Peter Klein complained to the Somers Zoning Commission regarding the plaintiffs' Water Operation. Id. at 58. A copy of Mr. Klein's February 9, 1997 letter is attached hereto as Exhibit F. By letter dated March 22, 1997, Shirley Warner complained to the Somers Zoning Commission regarding the plaintiffs' Water Operation. Plaintiff's Dep. Tr. at 58. A copy of Ms. Warner's March 22, 1997 letter is attached hereto as Exhibit G. In June 1998, Roger Steding complained to the Town regarding the truck traffic associated with the plaintiffs' Water Operation. Id. at 87. A copy of Mr. Stedman's June 25, 1998 letter to Mr. Taylor is attached hereto as Exhibit H. Id. Mr. Taylor discussed Mr. Steding's complaint with Mr. Gavlak but did not take any enforcement action. Id. at 88.

Neither the Town of Somers, nor any official of the Town, has ever placed a limit on the total number of truckloads of water that the plaintiffs may remove from Wood Farm. Id. at 105. Every year since the December 30, 1996 cease and desist order issued, the plaintiffs' business has experienced a growth in revenues. Id. at 114. From approximately December 1996 through August 1998, the plaintiffs' Water Operation was filling tanker trucks at the subject property seven days a week. Id. at 139.

372601

Although the ZBA prevailed in the plaintiffs' appeal of the cease and desist order concerning the interpretation of permitted agricultural uses, the case was remanded and the ZBA ultimately concluded that the plaintiffs' collection, storage and transportation of spring water constitutes a legal non-conforming use of the property. Taylor Aff., ¶8; Plaintiff's Dep. Tr. at 92, 96. The ZBA addressed the issue of non-conforming use on February 12, 2002, March 14, 2002, April 11, 2002 and July 10, 2003. Plaintiff's Dep. Tr. at 92-96; Taylor Aff., ¶¶8-9. By legal notice dated July 10, 2003, the cease and desist order was overruled by the ZBA. Taylor Aff., ¶9. Although several residential neighbors of the Water Operation talked about appealing the ZBA's ruling that the plaintiffs' Water Operation constituted a pre-existing non-conforming use, it was not appealed. Plaintiff's Dep. Tr. at 96-97.

**C.    The Plaintiffs Have No Evidence to Support Their Claim of Arbitrary or Disparate Treatment by the Town or ZBA**

The plaintiffs allege that, in November 1989, George Boisvert, the Town's former Zoning Official, offered to become David Gavlak's business partner. Id. at 117-119. After that one conversation that allegedly took place in November 1989, Mr. Boisvert never again raised the issue with Mr. Gavlak. Id. at 118. Mr. Boisvert ceased being the Town of Somers Zoning Official in approximately 1994 or 1995. Id. at 120. Mr. Gavlak has no proof that Mr. Boisvert had anything to do with the cease and desist order being issued. Id. at 121.

The plaintiffs' allegation that the defendants carried out a course of conduct designed to obstruct, impede or destroy the plaintiffs' business refers to Mr. Taylor's issuance of the December 30, 1996 cease and desist order. Id. at 133-137.50. The plaintiffs cannot identify any other water company that they claim was treated differently by the Town or the ZBA. Id. at 137-138.

At all relevant times, Mr. Taylor did the best he could to treat the plaintiffs fairly while at the same time addressing the concerns of the neighbors who complained about the truck traffic created by the plaintiffs' Water Operation. Taylor Aff., ¶10. Mr. Taylor has no knowledge of any alleged plan, or conduct, by the Town of Somers or its agents or employees designed to interfere with the plaintiffs' business activities. Id., ¶11. At all times Mr. Taylor did his best to fairly interpret and apply the Town of Somers' Zoning Regulations on an equal basis to all residents. Id.

## III.    LEGAL ARGUMENT

### A.    Summary Judgment Standard

A motion for summary judgment should be granted if the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); see generally Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970); Cronin, 46 F.3d at 202.

372601

The Second Circuit ruled that "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985). Instead, *"the plaintiff must offer concrete evidence raising genuine disputes of material fact tending to show that his version of events is more than fanciful."* Johnson v. Carpenter Tech. Corp., 723 F. Supp. 180, 182 (D. Conn. 1989) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, once the moving party has satisfied its burden of identifying evidence that demonstrates that no genuine issue of material of fact exists, the party resisting summary judgment is required to go beyond the pleadings, by way of affidavits, depositions and interrogatory responses, to demonstrate specific material facts that give rise to a genuine issue. Celotex, 477 U.S. at 324.

Plaintiffs here can offer no evidence that raises a genuine issue of material fact with respect to any of their remaining claims. The evidence demonstrates that the Town's Zoning Commission had legitimate reasons for issuing the cease and desist order; namely, numerous complaints from neighbors who were concerned about the large volume of truck traffic generated by the plaintiffs' business operation in a residential neighborhood. Moreover, the cease and desist order was issued after the plaintiffs were afforded notice and an opportunity to be heard; it was never enforced; and it

372601

was ultimately rescinded.  Accordingly, summary judgment should be granted in favor of the

defendants.

**B.      The Defendants are Entitled to Summary Judgment on the Plaintiffs' Equal
          Protection Claims**

The Fourteenth Amendment to the United States Constitution declares that "no State shall . . .

deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend XIV,

§ 1.  The equal protection clause requires that all similarly situated persons be treated alike."  City of

Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985).  Generally, claims brought pursuant to

the equal protection clause involve discrimination against people based on their membership in a

vulnerable class.  Typical equal protection claims are brought by a plaintiff who alleges that a law or

policy that "expressly classifies persons on the basis of race" or some other prohibited basis for

discriminatory treatment violates the provisions of the Equal Protection clause.  See, e.g., Adarand

Constructors, Inc. v. Pena, 515 U.S. 200  (1995).  A plaintiff may also identify a facially neutral law

or policy that had been applied in an intentionally discriminatory manner.  See, e.g., Yick Wo v.

Hopkins, 118 U.S. 356 (1886).   In each of these instances, a plaintiff's membership in a particular

class of persons is essential to the viability of the equal protection claim.

Courts have long recognized that the equal protection guarantee also extends to individuals

who allege no specific class membership, but who allege invidious treatment at the hands of a

government actor.  See, e.g., LeClair v. Saunders, 627 F.2d 606, 608-10 (2d Cir. 1980) (recognizing

372601