that plaintiff could bring an equal protection claim for "selective enforcement" or prosecution by government actor pursuant to a lawful state regulation even though plaintiff alleges no membership in a particular class of persons). The Supreme Court affirmed that the equal protection clause encompasses such "class of one" or "selective enforcement" claims and set forth the requirements for pleading such a claim in <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000). Specifically, the Court held that "our cases have recognized successful equal protection claims broght by a class of one, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Id.</u> at 564.

    Plaintiffs' equal protection claims here may only be construed as the kind of "class of one" or "selective enforcement" claim governed by <u>Olech</u> and similar cases. Plaintiffs here allege no membership in a specific class of persons. They seek damages for what they allege to be selective enforcement of the Town's zoning regulations against them. Specifically, they allege that they were subjected to a "course of conduct, which continues to the present day, designed to obstruct, impede and destroy the business activities of the plaintiffs relating to the harvesting, transportation and sale of natural water . . ." Complaint, ¶9.

    Plaintiffs set forth several factual allegations to support their allegations that the defendants acted in violation of their official duties. Complaint. ¶¶7-11. While the plaintiffs may have alleged facts sufficient to meet the minimal pleading requirement for a class of one equal protection claim, as

372601

11

established by Olech, they are unable to produce evidence sufficient to overcome higher burden on summary judgment. See e.g., De Muria v. Hawkes, 328 F.3d 704, 707 (2d Cir. 2003) (acknowledging that although plaintiff successfully pleaded a class of one claim, the plaintiff face a significant hurdle on summary judgment in finding evidence to prove their allegations of an equal protection violation).

At the summary judgment stage, the Second Circuit requires that in order to prevail on a class of one equal protection claim for selective enforcement of a legitimate government regulation, plaintiffs have traditionally been required to provide evidence that (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to inure a person. Harlen Assoc. v. Village of Mineola, 273 F.3d 494 (2d Cir. 2001); LeClair, 627 F.2d at 609-10.

With respect to the first prong, plaintiffs can offer nothing to demonstrate that the defendants treated them differently from other similarly situated individuals. Plaintiffs' complaint alleges that, "the defendants subjected the plaintiffs to disparate treatment compared to other businesses in the town and compared to other applicants for zoning permits, did so intentionally, arbitrarily, irrationally, and maliciously, and thereby deprived the plaintiffs of equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution." Complaint, ¶23. Mr.

Gavlak's own deposition testimony, however, indicates that plaintiffs do not have evidence to support such this allegation.

When asked to identify how the plaintiffs were treated differently from other businesses in Town, the best Mr. Gavlak could offer was that another construction company, or a home builder, had also been the subject of complaints by the neighbors who complained about him, the Slaters, Kleins, Warners and Stedings. Plaintiff's Dep. Tr. at 137-138. Mr. Gavlak cannot identify any facts or evidence to support his claims against the Town, except the issuance of the cease and desist order, which he acknowledges was never enforced. Id. at 133-138.

While Mr. Gavlak does not have the evidence, Mr. Taylor's sworn affidavit indicates that he did his best to treat the plaintiffs fairly while at the same time addressing the concerns of the neighbors who complained about the truck traffic created by the plaintiffs' Water Operation. Taylor Aff., ¶10. He has also sworn that he's not aware of any alleged plan, or conduct, by the Town or its agents designed to interfere with the plaintiffs' business activities. Id., ¶11. Plaintiffs have presented no evidence to contradict Mr. Taylor's statement.

As is the case here, where plaintiffs cannot demonstrate unequal treatment, the equal protection claim must fail on a motion for summary judgment. See, e.g., Presnick v. Delaney, 33 Fed. Appx. 5, 6 (2d Cir. 2002) (rejecting plaintiffs' claim for violation of the equal protection clause where "plaintiff has not shown that similarly situated individuals were treated differently."); Rossi v.

City of New York, 75 Fed. Appx. 18, 20-21 (2d Cir. 2003) (rejecting claim of selective enforcement of vending laws where plaintiff did not point to others who were treated differently by city agency in application of the laws).

Even assuming that plaintiffs could demonstrate that the defendants treated them differently from an identifiable group, plaintiffs will be unable to produce evidence to satisfy the second prong of the Second Circuit's test for liability on a theory of selective enforcement. The plaintiffs offer no evidence that any alleged selective enforcement occurred because of their race, nationality, or other invidious reasons. Plaintiffs have no evidence to support such a claim, except the allegation that, in 1989, seven years prior to the cease and desist order, a town official allegedly sought to invest in Mr. Gavlak's business. Complaint, ¶8. Even Mr. Gavlak acknowledges that he has no facts or evidence to connect that isolated allegation from 1989 to the issuance of the cease and desist order in 1996. Plaintiff's Dep. Tr. at 118-121.[1] As a result, the plaintiffs' claims must fail.

In fact, plaintiffs offer nothing but conjecture and speculation with regard to the subjective motivations of the defendants. Accordingly, the defendants' summary judgment motion should be granted. Harlen, 273 F.3d at 502 ("Although the issue of whether an action was motivated by malice generally is a question of fact properly left to the jury, we will uphold a grant of summary judgment

---

[1] Any claims from 1989 are long barred by the three year statute of limitations contained in Connecticut General Statutes §52-577.

372601
14

where the nonmoving party adduces nothing more than speculation to support its claims."); Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999) (affirming grant of summary judgment where "appellant's assertion that the Town enforced the ordinance against it with an impermissible motivation was sheer conjecture and speculation.") (internal quotations omitted); LeClair, 627 F.2d at 610 (same).

It should be noted that some courts have suggested that the Supreme Court's decision in Olech modified the two-prong test first established by the Second Circuit in LeClair. See, e.g., Jackson v. Burke, 256 F.3d 93, 97 (2d Cir. 2001) (noting in dicta that in light of Olech's pleading requirement, "proof of subjective ill will is not an essential element of a class of one equal protection claim"). Other courts disagree. See, e.g., Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000) (holding that Olech did not remove the requirement that a plaintiff alleging an equal protection violation based on selective enforcement prove that the governmental action was motivated by personal animus); Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir. 2000) (same). The Second Circuit has not yet resolved the question of whether a plaintiff must still prove the second prong of the LeClair test.

Even if the Second Circuit concludes that Olech modified the LeClair two-prong test, under Olech, the plaintiff still must plead and present evidence that the government action was "irrational

and wholly arbitrary." See, e.g., Harlen, 273 F.3d at 499-500 (and cases cited therein). Plaintiffs are unable to do so, thus the defendants are entitled to summary judgment.

In order to establish that a government official is acting irrationally, the plaintiffs must demonstrate that they acted "with no legitimate reason for its decision." Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996). With respect to all of the actions taken by the defendants concerning the plaintiffs' Water Operation, their conduct was entirely rational, and a legitimate reason can be found for each.

First, multiple neighbors, including persons who had been friends with Mr. Gavlak for many years, complained to the Town regarding the truck traffic generated by the plaintiffs' Water Operation. Plaintiff's Dep. Tr. at 34, 57-62. Second, just prior to the cease and desist order, plaintiffs had been removing approximately 37,000 gallons of water a day, often seven days a week, generating significant truck traffic in a rural, residential neighborhood. Id. at 139. Third, the cease and desist order was issued after two hearings, on September 3, 1996 and December 2, 1996, at which the plaintiff and his supporters had notice and an opportunity to be heard. Id. at 62, 68. Fourth, as the Connecticut Supreme Court noted, Mr. Gavlak's novel claim that he was a "water farmer," harvesting water, did not constitute a permitted agricultural use under the Town's zoning regulations. Wood, 258 Conn. at 706. Finally, while the zoning appeal was litigated, the cease and desist order was not enforced, the plaintiff's business remained in operation and even grew, and the

372601

16

order was ultimately rescinded after plaintiffs' operation was deemed a pre-existing non-conforming use. Plaintiff's Dep. at 78-79, 98.

In sum, because plaintiffs have no evidence indicating that similarly situated persons were treated differently by the defendants, and because plaintiffs cannot demonstrate that the defendants were motivated by any invidious reasons or ill-will, bad faith, malice, their equal protection claims fail and summary judgment should be granted in favor of the defendants. Moreover, even if plaintiffs are not required to provide evidence with respect to the defendants subjective intent, none of the evidence indicates that the defendants acted irrationally or without a legitimate purpose. All of the evidence indicates that the defendants rationally responded to the neighbors' concerns and complaints. Accordingly, plaintiffs' claims against the defendants for violation of the equal protection clause must fail.

    C.    **The Defendants are Entitled to Judgment in their Favor on the Plaintiffs' Due Process Claims**

Plaintiffs also bring a claim against the defendants alleging that they deprived the plaintiffs of procedural and substantive due process of law in violation of the Fourteenth Amendment to the United States Constitution. Complaint, ¶¶21-22. The Fourteenth Amendment provides that a state actor may not "deprive any person of life, liberty or property without due process of law[.]" U.S. Const. Amend. XIV. In order to maintain their due process claims, the plaintiffs must allege, and provide a proper evidentiary foundation for, the existence of some facts that would establish that the

372601

17

defendants deprived them of a constitutionally protected property or liberty interest. Bd. of Regents v. Roth, 408 U.S. 564, 569-71 (1972).

Plaintiffs have made the conclusory allegation that the defendants' actions have deprived them of their right to both procedural and substantive due process. Complaint, ¶¶21-22. But plaintiffs have failed to allege any facts that would support either claim. Accordingly, the defendants are entitled to summary judgment.

"In order to sustain an action for deprivation of property without due process of law, a plaintiff must 'first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process.'" Local 342 v. Town of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) (quoting Mehta v. Surles, 905 F.2d 595, 598 (2d Cir. 1990) (per curium)). The property right that the plaintiff must identify is generally created by state law. Cybulski v. Cooper, 891 F. Supp. 68, 70 (D. Conn. 1995) (citing Bd. of Regents v. Roth, 408 U.S. at 576-77). In addition, constitutionally-protected property interests may also be created by contract or mutual agreement. Id. (citing Brock v. Roadway Express, Inc., 481 U.S. 252, 260-61 (1987)).

The Second Circuit has been hesitant to expand the definition of "property" within the context of the Fourteenth Amendment. See S&D Maint. Co., Inc. v. Goldin, 844 F.2d 962, 967 (2d Cir. 1988) ("the course of the law in this Circuit has not moved beyond according procedural due process

18

protection to interests other than those well within the contexts illustrated by Goldberg v. Kelley, 3987 U.S. 254 (1970) and Roth"). It is well established and often noted that property rights "are not created by the Constitution . . . but stem from an independent source." Loudermill, 470 U.S. at 538, 105 S.Ct. at 1491.

Plaintiffs' procedural due process claim is not explicit with regard to exactly what property interest they have been deprived of. Presumably, plaintiffs mean to allege that the issuance of a cease and desist order affected their property rights without due process of the law. Indeed, based on the Complaint, the defendants cannot conceive of another possible theory whereby plaintiffs could successfully allege a violation of their procedural due process rights. While the defendants do not contest that the defendants have a legitimate property interest, whatever effect that the cease and desist order had on the plaintiffs' property interest, the plaintiffs were afforded due process.

"[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125 (1990). The individual is only entitled to notice and an opportunity to be heard. Loudermill, 470 U.S. at 546; Roth, 408 U.S. at 570. "The fundamental requirement of due process is the right to be heard at 'a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

372601

19

Both before and after Mr. Taylor issued the cease and desist order, the plaintiffs were afforded the opportunity to appear and be heard. Plaintiff's Dep. Tr. at 92-96. While the plaintiffs appealed the order, it was not enforced and their business was not interrupted. Id. at 78-79, 98. It was ultimately rescinded. Id. at 92-96. In light of the fact that the plaintiffs were afforded notice and an opportunity to be heard, the court should grant summary judgment with respect to plaintiffs' procedural due process claim. See, e.g., Huck v. Inland Wetlands and Watercourses Agency of the Town of Greenwich, 525 A.2d 940, 945 (Conn. 1987) (where local inland wetlands agency conducted hearing after due notice and allowed parties to produce relevant evidence, agency decision complied with due process requirements).

Moreover, assuming plaintiffs could demonstrate that they were deprived of some property right by virtue of the cease and desist order, there existed adequate and appropriate post-deprivation state remedies whereby the plaintiffs were able to gain redress for any perceived wrongdoing. Accordingly, judgment must be issued in favor of the defendants on plaintiffs' procedural due process claims.

In addition to the procedural due process claim, plaintiffs allege that the conduct of the defendants violated their substantive due process rights. The due process clause has historically been held to forbid arbitrary infringements of certain personal immunities that are "implicit in the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325 (1937), and infringements that "shock

372601

20

the conscience." Rochin v. California, 342 U.S. 165, 172 (1952).  Such infringements have been held to violate the due process requirements of the Constitution regardless of the procedures that are employed.  Monroe v. Pape, 365 U.S. 167, 171-72 (1961).  These infringements implicate the "substantive" component of due process.

The evidence in this case cannot support plaintiffs' substantive due process claim against the defendants.  First, as discussed above, the defendants' conduct with respect to their dealings with the plaintiffs was inherently reasonable.  Nothing done by the defendants can be said to rise to the level of behavior that "shocks the conscious."  Therefore, plaintiffs' substantive due process claim should fail.

Moreover, substantive due process claims are disfavored in disputes over land use.  The Second Circuit has explicitly stated that "arbitrary conduct that might violate zoning regulations as a matter of state law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the due process clause."  Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999).  The court noted that "the conventional planning dispute—at least when not tainted with fundamental procedural irregularity, racial animus or the like . . . is a matter primarily of concern to the state and does not implicate the Constitution."  Id.  Because the present case does not involve "fundamental procedural irregularity, racial animus, or the like," plaintiffs' substantive due process claims should not withstand this

372601

21

motion. Such a result is consistent with the United States Supreme Court's admonition that the "substantive due process" doctrine is to be applied with "caution and restraint." Moore v. City of East Cleveland, 431 U.S. 494, 502 (1977) (plurality opinion, Powell, J.).

### D. The Town of Somers is Entitled to Summary Judgment

Plaintiffs have not alleged, nor have they provided any evidence, that the Town of Somers is directly liable for any wrongdoing. Moreover, it is well settled that a municipality may not be held liable under 42 U.S.C §1983 for actions of its employees or officers based upon the theory of respondeat superior. Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). Rather, "[i]n order to establish municipal liability for unconstitutional acts by municipal employees [or officers], a plaintiff must show that the violation of [her] constitutional rights resulted from a municipal policy, custom or practice." Johnson v. City of New York, 940 F. Supp. 631, 638 (S.D.N.Y. 1996). Since the plaintiffs have not alleged a Monell type claim, and have not provided any evidence that could possibly demonstrate a custom or practice on the part of the Town of Somers that resulted in the alleged constitutional violation, the inclusion of the Town as a defendant in inappropriate. Therefore, summary judgment should be granted in favor of the Town of Somers on all remaining claims.

IV.  **CONCLUSION**

For the foregoing reasons, the defendants' Motion for Summary Judgment should be granted.

          RESPECTFULLY SUBMITTED,
          DEFENDANTS,
          TOWN OF SOMERS and
          SOMERS ZONING BOARD OF APPEALS

By: _____
     JAMES N. TALLBERG, ESQ.
     Federal Bar Number Ct17849
     UPDIKE, KELLY & SPELLACY, P.C.
     One State St., P.O. Box 231277
     Hartford, CT 06123-1277
     Tel. No. (860) 548-2600
     jtallberg@uks.com

372601

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing has been sent via U.S. mail, postage prepaid, this 1st day of September 2004, to the following counsel of record:

John R. Williams, Esq.
William & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

By: _____
JAMES N. TALLBERG, ESQ.
Updike, Kelly & Spellacy, P.C.

372601

24