# EXHIBIT A

7c.
TOWN CLERK
SOMERS, CT
RECEIVED
MAY 2 2002

TOWN OF SOMERS
ZONING BOARD OF APPEALS
FEBRUARY 12, 2002

**DISCUSSION -- Hillside Spring Water, Inc.**

MR. TORRES: All right, we'll go on with the second topic, that would be Public Hearing/Discussion. We'll open discussion to review the State Supreme Court's remand back to the ZBA for final determination of whether or not Mr. Gavlak's operation constitutes a legal, non-conforming use for Somers Zoning Regulations. Now I think, that all .......

MR. MACK: I'm going to abstain.

MR. TORRES: You're going to back off?

MR. MACK: I'm going to back off.

MR. TORRES: All right. Do you have any problem with this case? I know you're not familiar with this, but......

MRS. LLOYD: Other than being not familiar with it.

MR. TORRES: We'll be making a decision based on the merits of the case itself.

MRS. LLOYD: I would to have a chance to further review it, you know, before....

MR. TORRES: Oh, you would have that. I'm not saying we're going to render a decision tonight, but I'm saying this is the kickoff on it. And, we'll

1

have 65 days from today to render a decision. So, everybody received a packet. I mean, you were just approved yesterday, so, obviously you couldn't have gotten it. I could have brought it tonight, but I held off on the packet to give it to you, not knowing whether or not you had a problem with dealing with this case, or if you have an open mind to be able to do it.

MRS. LLOYD: The open mind, I feel is there, whether I need, you know, to get familiar with it......

MR. TORRES: As long as you're not a personal friend of the applicant or related to the applicant, then you don't have a problem with it.

MRS. LLOYD: Mr. Gavlak? No.

MR. TORRES: O.K.

MRS. LLOYD: not at all.

MR. TORRES: O.K. That's fine. Here's a packet for you.

MRS. LLOYD: O.K.

MR. TORRES: What this is, is a packet that came back from the courts. In other words, when the court dealt with the Gavlak case, this is the, the packet of information that they had. Now, what has happened is, ...... I'll just, just because we're discussing it, this is just to bring to light some of the parts. I'll give you each a copy of each......This is the cover sheet that was sent from the attorney. This is the Town Attorney. Everybody should have a letter that was sent from Mr. Gavlak's attorney. I just got this in the mail today. This is not.....We can't take any more new evidence and this is just informational notes. We take any new evidence and it has to be in a hearing. We can't do it like this. All right, everybody read the one from our attorney and then

2

have 65 days from today to render a decision. So, everybody received a packet. I mean, you were just approved yesterday, so, obviously you couldn't have gotten it. I could have brought it tonight, but I held off on the packet to give it to you, not knowing whether or not you had a problem with dealing with this case, or if you have an open mind to be able to do it.

MRS. LLOYD: The open mind, I feel is there, whether I need, you know, to get familiar with it......

MR. TORRES: As long as you're not a personal friend of the applicant or related to the applicant, then you don't have a problem with it.

MRS. LLOYD: Mr. Gavlak? No.

MR. TORRES: O.K.

MRS. LLOYD: not at all.

MR. TORRES: O.K. That's fine. Here's a packet for you.

MRS. LLOYD: O.K.

MR. TORRES: What this is, is a packet that came back from the courts. In other words, when the court dealt with the Gavlak case, this is the, the packet of information that they had. Now, what has happened is, ......I'll just, just because we're discussing it, this is just to bring to light some of the parts. I'll give you each a copy of each.....This is the cover sheet that was sent from the attorney. This is the Town Attorney. Everybody should have a letter that was sent from Mr. Gavlak's attorney. I just got this in the mail today. This is not.....We can't take any more new evidence and this is just informational notes. We take any new evidence and it has to be in a hearing. We can't do it like this. All right, everybody read the one from our attorney and then

2



TOWN OF SOMERS
ZONING BOARD OF APPEALS
FEBRUARY 12, 2002

MAY 2 2002

**DISCUSSION – Hillside Spring Water, Inc.**

MR. TORRES: All right, we'll go on with the second topic, that would be Public Hearing/Discussion. We'll open discussion to review the State Supreme Court's remand back to the ZBA for final determination of whether or not Mr. Gavlak's operation constitutes a legal, non-conforming use for Somers Zoning Regulations. Now I think, that all .......

MR. MACK: I'm going to abstain.

MR. TORRES: You're going to back off?

MR. MACK: I'm going to back off.

MR. TORRES: All right. Do you have any problem with this case? I know you're not familiar with this, but......

MRS. LLOYD: Other than being not familiar with it.

MR. TORRES: We'll be making a decision based on the merits of the case itself.

MRS. LLOYD: I would to have a chance to further review it, you know, before....

MR. TORRES: Oh, you would have that. I'm not saying we're going to render a decision tonight, but I'm saying this is the kickoff on it. And, we'll

1

we'll read the one from Gavlak's attorney. All right, you saw the 2 letters and now I refer you to item number 2. In your packet. And that has the Cease and Desist that was issued by the Enforcement Officer. And I'll read it just for reference. "Regarding Operation on Wood Road." This is dated December 30, 1996. It says: "Gentlemen, you are hereby notified that the operation being conducted by you relating to the collection, storage, and transportation of spring water from the premises located at 223 Wood Road is not presently permitted by the Somers Zoning Regulations, 2.03.01, 4.05b and 4.05c." And he says, "Additionally, your activity does not fall within the scope of agricultural and/or farming as those items are defined in the Regulations, sections 2.02. Since this activity is not specifically permitted by the regulations, it is prohibited. And you are cordially ordered to cease and desist from this activity." Now, in our decision that we rendered after all the testimony that was given, the way, the verbiage that was given, and this is item number seven b, and this was the decision that was rendered April 10th, nineteen ninety seven and May eighth, nineteen ninety seven. That was when we had the two hearings. And the wording is "a cease and desist order issued by the Somers Zoning Enforcement Officer to Bruce Wood and David Gavlak of Hillside Spring Water Incorporated, 223 Wood Road, Somers, Connecticut was upheld by a unanimous vote by the Zoning Board of Appeals. The cease and desist order was given for the operation being conducted relating to the collection and storage and transportation of spring water from the premises of two twenty three Wood Road, Somers. The Zoning Board of Appeals agreed that this activity does not fall within the scope of agriculture and/or farming as those terms are defined in the Somers Zoning Regulations, Sections 2.02." Now what happened, if you'll recall, is the hearing pretty much was geared towards trying to convince the Board that this was an agricultural operation. And, didn't deal that much with the non-conforming use. But at the same time, the Enforcement Officer, when he issued his Cease and Desist, he addressed both issues. Both the non-conforming use, which is the first part he talked about and then the agricultural part, when he talked about the second part. In other words, when he first refers to paragraph 2.0301 and four oh 5, b and c, that deals with the non-conforming use. In other words, it's not listed anywhere in the Zoning Regulations. And if it's not listed there, it's not permitted. And then, 2.02, regards to farming. So, when the legal notice was written, it talked about the farming

3

have 65 days from today to render a decision. So, everybody received a packet. I mean, you were just approved yesterday, so, obviously you couldn't have gotten it. I could have brought it tonight, but I held off on the packet to give it to you, not knowing whether or not you had a problem with dealing with this case, or if you have an open mind to be able to do it.

MRS. LLOYD: The open mind, I feel is there, whether I need, you know, to get familiar with it......

MR. TORRES: As long as you're not a personal friend of the applicant or related to the applicant, then you don't have a problem with it.

MRS. LLOYD: Mr. Gavlak? No.

MR. TORRES: O.K.

MRS. LLOYD: not at all.

MR. TORRES: O.K. That's fine. Here's a packet for you.

MRS. LLOYD: O.K.

MR. TORRES: What this is, is a packet that came back from the courts. In other words, when the court dealt with the Gavlak case, this is the, the packet of information that they had. Now, what has happened is, ......I'll just, just because we're discussing it, this is just to bring to light some of the parts. I'll give you each a copy of each.....This is the cover sheet that was sent from the attorney. This is the Town Attorney. Everybody should have a letter that was sent from Mr. Gavlak's attorney. I just got this in the mail today. This is not.....We can't take any more new evidence and this is just informational notes. We take any new evidence and it has to be in a hearing. We can't do it like this. All right, everybody read the one from our attorney and then

2

issues, but it didn't address the non-conforming use. So what the courts are saying, well, what the courts just implied that "well, since we upheld the Cease and Desist, then that's the whole thing. But the Court says no, you can't imply anything, it has to be explicit. We're explicit in one regard, but in the other regard. So this case got remanded back to us and the courts wanted us to look at, are we saying in our decision, are we saying that the whole Cease and Desist stands? In other words, not only the regulation of farming, but also non-conforming use. So what we have to do now, is we're looking at the documents that were presented at the hearing and seeing if our decision also includes the non-conforming use. O.K.? And then you saw the 2 letters from the attorneys and the rest of the documents and I'll open it up for any other discussion. Like I said before we started, we have sixty five days to make a decision, from this date. I'm not saying we have to make a decision today. It wouldn't be fair to Pamela, since she's just coming on board, there's no way she can read this..........she's not a speed reader. I would say that we wouldn't be rendering our decision today. But, you know, we're here, we can have any discussion you want. Let the discussion stay on the basis of the packets we received. Anybody have any questions or comments about the letters that were submitted? I have a question........Our attorney is recommending that we do not (hold a public hearing). But, I mean, we're not here to decide that at all.....But, I mean, if you feel we don't have enough information to make a decision.... I mean, if there's something lacking, then, we just :....close your eyes to it. That's why the reports, they may have some new information that they want to present; I'm sure they probably do, but we have to decide, do we need any new information to make that decision? And our attorney has indicated that there should no need for it. I personally don't think there's any need for it.

    OTHER BOARD MEMBER: (inaudible – too far from recording device)

    MR. TORRES: Prior to Zoning Regulations, right. In other words, they're saying that non conforming use, legal non conforming use means that what's been going on now, has always been going on. There's no change. The reason this is coming in before us, the agricultural part of it, (inaudible), the non conforming use

4

would be no issue. I mean, it would be a no-brainer. But the fact.....If it was recognized as an agricultural use, then it's a hands off type of thing, then they could treat it like a farm. And a farm can do as much work as they want. But because they didn't get that, now they have this other thing to fall back on, the non-conforming use. Now for the non-conforming use, we have to look at it and say, "well, is this something that just started up, you know, since this issue occurred," or, they're claiming we've seen the testimony where this goes back 300 years. Yeah, there was always there. There was probably water there twelve hundred years ago. But what they were doing prior to this 1990, 1996. Were they just using it for the farm there? Were they doing what they're doing now? Collecting it in trucks, purifying and selling it? Were they doing that, or did they just start doing that? That's a change in use, you know, some of those things, and you have to look at that part. And see what's happened. Is it a legal non-conforming use or not? Our Regulations state what is permitted and what is not permitted. And just as the Enforcement Officer issued the Cease and Desist, when you look at that, that's his opinion. And it's up to us to see whether he's right or wrong.

MR. YOUNG: (inaudible – too far from recording device).

MR. TORRES: Right. We look at the packet, and study it. If you feel there's not enough information, or you have some questions, that.....you write down some questions, that I'd like to know more about this or know more about that, whatever it might be, you'd have to open up a hearing in order to do that. Because you can't take on any new testimony, just like we do in here. All we can do is go back on the packet that was given to us. If we want more, then we have to open up a hearing to do that. Any questions?

MR. BEAULIEU: No questions.

MR. TORRES: A motion to table this discussion until our next meeting?

5

MR. SCULLY: Motion.

MR. TORRES: A motion made by Dan to table discussion until the next meeting.

MR. BEAULIEU: I second.

MR. TORRES: Motion seconded by Jim. All in favor?

MR. BEAULIEU: Aye]
MR. SCULLY: Aye
MRS. LLOYD: Aye
MR. TORRES: Aye. Motion is carried.

7d.

## ZONING BOARD OF APPEALS
### DISCUSSION OF GAVLAK COURT CASE
### AT ZBA MEETING OF MARCH 14, 2002

MR. TORRES: Continued Discussion to review the State Supreme Court's remand back to the ZBA for the final determination of whether or not Mr. Gavlak's operation constitutes a legal, non-conforming use per Somers Zoning Regulations. Did I give you a copy of this letter from our attorney? Because there was two letters. One was from the Gavlak attorney and one was from our attorney. This is Fahey and......Do you have that? So, everybody has that. I wasn't sure if I gave everybody that so I made extra copies. O.K. I'll start off with review of some of the aspects of these hearings.

MR. MACK: Mr. Chairman, I excuse myself from these hearings.

MR. TORRES: Oh, O.K. Yeah. That's right. So there's going to be just four of us to deal with the decision if we render a decision this evening. That's just going to be four of us doing it because the other member is away on a business trip. As a matter of fact, he's in Brazil. They already had the baby. Baby girl. O.K. So, let's go on then. If you look at item 2. Maybe it would be easier if we each grab the item as I refer to it, that way you can all follow along with me. It's the half a page one. You can see the Applicant Bruce Wood, David Gavlak, and Hillside Water, Incorporated hereby appeal from a cease and desist order issued by James R. Taylor, Zoning Enforcement Officer of the Town of Somers, dated December thirtieth, nineteen ninety six. Received January tenth, nineteen ninety seven. This appeal is filed pursuant to Section 214 dash 112 of the Code of the Town of Somers. The collection, storage, and transportation of spring water located on the premises of two twenty three (223) Wood Road is presently permitted by the Somers Zoning Regulations. In addition, the activity falls under the scope of agriculture and/or farming. So, that was their application. And then dated December thirty, nineteen ninety six. This was dated one thirteen ninety seven (1/13/97). A cease and desist order was issued by the Zoning Enforcement Officer on December thirtieth, nineteen ninety six. Regarding water operation on Wood Road. "Gentlemen:

1

You are hereby notified that the operation being conducted by you relating to the collection, storage and transportation of spring water from the premises located at 223 Wood Road is not presently permitted by the Somers Zoning regulations. 2.03.01, 4.05B, 4.05C. Additionally, your activity does not fall within the scope of agriculture and/or farming as those terms are defined in the Regulations (Section 2.02). Since this activity is not specifically permitted by the regulations, it is prohibited and you are accordingly ordered to cease and desist from this activity." And then it goes on to say that "You are hereby advised that Chapter 124 of the Connecticut General Statutes provides severe penalties for those who ignore the issuance of orders such as these. You should also be advised that you may have a right to appeal the issuance of this order. You should seek competent legal advice to insure that your rights are protected." O.K. So, they have done that. So the Cease & Desist was issued. They came before us. And, they had the ....we dealt with their appeal and we have the verbatim of the appeal to ZBA. O.K. The public hearing. Six A. That was on April 10, 1997. And, I'm obviously not going to read that, cause it's pretty lengthy. One thing I did point....want to bring to your attention, which was on page 19. Because it's relevant to the information at hand. "Mr. Gavlak:"......The top of the page says: "Mr. Torres: How large is your operation today, in comparison to three or five years ago in terms of truck traffic? Mr. Gavlak: The operation, like I said, with the drinking water, started in June or July of 1996." So, he's saying that the operation that he has and is conducting presently, started in June or July of 1996. That's the trucking of the drinking water. And then, item 6 B was our.....was the following month when we had our discussion. And that was dated May 8 of 1997. And I'm not going to read through that. And I would assume all of you had a chance to read through all that. Anything.....we'll open that up for discussion, of course. Just, bringing some things up for you and we'll discuss it. What else do I have? This is a document that.....9C, dated August 22nd, 1996. And I had this just to indicate.....It's written by a...Oh, it's written to a Mr. Cunningham and it's written by David Askew, the Wetlands Enforcement Officer. And item 2 refers to the time when this water operation or .....I mean this activity that Mr. Gavlak initiated. It was back in.....April ......yeah, April, 1991 and May, 1991. At that time he was taking water from the springs and he was using it for filling of pools and .....I guess pools is first, but I guess providing potable water for

2

commercial use. That's item one. Mr. Gavlak received all the appropriate permits, including permits for wetland alteration. "Two wetland permits were granted by the Conservation Commission in April, 1990 and May, 1991. Please see attached documents." So, he got permission to take water from the well. So he was doing that in 1990 and he changed the operation to trucking water out for commercial use – drinking water. O.K. Item B we did. I guess that's all the ones I have. Now, since you've all had a chance to read the packet, I open it up to any comments, from either any of the stuff I've mentioned, or anything that you brought up, or that you uncovered. Jim?

MR. BEAULIEU: The only thing I've got, is…..like, like you had highlighted on page 19, the operations started in June or July of 1996, which is after the regulations changed. And, even if it…..if something had started, you know they did a lot of reference back to what they did in the 1700's and so on and so forth. According to the Codes, 214 dash 29, what they did come under an extension or an enlargement of a non conforming use, which can't be done either. So, that's about what I found.

MR. TORRES: Yeah, the water, as it states in the transcript of the hearing….and I'm sure there's a lot of proof of that. It goes back to the 16 or 1700's. The water's always been there. It's a natural event there and it's always been used by that farm and the family there. It's been used there and I guess the farm across the street has been using it too. You see, it was just in support of the farm, the farming activity there. It wasn't a commercial operation there by itself. In other words, they weren't selling water, or trucking it to other places at that time. It was just on the farm there. And that's been going on for two, three hundred years. And the fact that they've made improvements over the years…..I guess it mentions the fact that, way back, they were using wood pipes and so forth to transfer the water, and of course, they use much better tubing and so forth today, whether it's metal or plastic. And also, they have filtration today which is much better than it was before. I doubt that they had any filtration before. So, there's a lot of improvements they've been doing over the years. But, you know, that's not the issue that's before us right now. Ken?

3