UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------ :
DAVID GAVLAK AND                                      :   CIVIL ACTION NO.  3:02CV1410(JCH)
HILLSIDE SPRINGS FARM, INC.                           :
                                                      :
    Plaintiffs,                                       :
v.                                                    :
                                                      :
TOWN OF SOMERS AND                                    :
SOMERS ZONING BOARD OF APPEALS                        :
                                                      :
    Defendants.                                       :   OCTOBER 5, 2004
_____ :

**DEFENDANTS' REPLY TO PLAINTIFFS' OBJECTION
TO MOTION FOR SUMMARY JUDGMENT**

      Defendants Town of Somers and Somers Zoning Board of Appeals (the "ZBA") respectfully reply to the Plaintiffs' September 19, 2004 Brief in Opposition to Motion for Summary Judgment (hereinafter "Mem. Opp."). The plaintiffs have not provided either a factual or legal basis upon which to deny the defendants' motion. Instead, plaintiffs have admitted at least forty-one (41) of the fifty three (53) statements of undisputed fact offered by the defendants. An examination of the few material facts that the plaintiffs have tried to disagree with reveals that those facts, too, are undisputed and show that the ZBA had a rational basis for its handling of the plaintiffs' appeal of the cease and desist order that is the subject of this case.

375500

In particular, the ZBA acted in response to complaints made by neighbors about truck traffic in their residential neighborhood created by the plaintiffs' commercial water hauling operation. In addition, although part of the plaintiffs' claim survived a motion to dismiss, that is only because at that stage the Court was limited to the facts as alleged by the plaintiffs. See Gavlak v. Town of Somers, 267 F. Supp. 2d 214, 217 (D. Conn. 2003). Now, with the plaintiffs' agreement to the vast majority of material facts; compare Defendants' Local Rule 56 Statement in Support of Defendants' Motion for Summary Judgment, ¶¶1-9, 11-12, 14-15, 17-20, 22-32, 34-37, 40-41, 43-48 with Plaintiff's Local Rule 56 Statement (hereinafter "Undisputed Facts"); the Court has before it a full record, which demonstrates that the ZBA acted reasonably in dealing with the plaintiffs' novel claim that they were "water farmers," including their nonconforming use claim.

Furthermore, the plaintiffs have failed to offer any evidence that they had a "clear entitlement" to qualify as a preexisting nonconforming use and they have falsely claimed that they were denied a hearing. Instead, the legality of their commercial water operation in a residential zone, including their nonconforming use claim, presented an issue of first impression that the ZBA, Connecticut Superior Court, and Connecticut Supreme Court wrestled with. Finally, the plaintiffs have failed to produce any evidence of disparate treatment, which is required for the plaintiffs to prevail on their theory that they were denied equal protection under the law. For the foregoing reasons, and the reasons more fully explained below, the defendants' Motion for Summary Judgment should be granted.

I.   **The Plaintiffs Were Afforded Due Process**

Judge Goettel denied the defendants' Motion to Dismiss for essentially two reasons. First, he was required to accept the plaintiffs' allegations as true. See Gavlak; 267 F.Supp. 2d at 217. Second, because the defendants were not allowed to introduce evidence beyond the four corners of the complaint, Judge Goettel was left with an incomplete record and the false impression, as alleged by the plaintiffs, that the ZBA acted without even affording the plaintiffs a hearing. Id. at 221-22 ("the Board . . . held, without a hearing or explanation, that the plaintiffs' use of the property did not constitute a nonconforming use."). Plaintiffs now admit they were given at last four ZBA hearings following remand by the Supreme Court. Undisputed Facts, ¶46. This precludes the plaintiffs' claims that their federal constitutional rights were violated.

A.   **Substantive Due Process**

In their Opposition, the plaintiffs argue that the ZBA deprived them of a property interest by continuing the December 30, 1996 cease and desist order "without affording the plaintiffs an opportunity to be heard." Mem. Opp. at 4. Yet, plaintiffs have admitted, and documents offered by the plaintiffs confirm, that the ZBA conducted hearings regarding the plaintiffs' nonconforming use claim on February 12, 2002, March 14, 2002, April 11, 2002 and July 10, 2003. Undisputed Facts, ¶46. Contrary to their argument, plaintiffs were afforded an abundance of due process on their nonconforming use claim.

First, when the plaintiffs initially appealed the cease and desist order to the Superior Court, the Trial Court addressed the nonconforming use claim and held that, "harvesting" of water was not a

375500

nonconforming use because, although natural springs had produced water at Wood Farm for 200 years, "the use of one of those springs changed in 1991 when it became a commercial activity and the water was transported off-site for sale." See Wood v. Somers Zoning Board of Appeals, 1999 Conn. Super. LEXIS 2932 at 4, (Stengel, J., October 29, 1999) (attached hereto as Exhibit A). The Supreme Court reversed the Trial Court on this point, and remanded the case to the ZBA "for a determination limited to the issue of whether Hillside's use of the subject property for the collection, storage and transportation of spring water constitutes a legal nonconforming use." Wood v. Somers Zoning Board of Appeals, 258 Conn. 691, 709 (2001).

On remand, the ZBA struggled with whether the plaintiffs' admitted change in use of the property meant that it did not enjoy the status of a nonconforming pre-existing use. When the ZBA met on February 12, 2002, the Chairman stated, "[w]e'll open discussion to review the State Supreme Court's remand back to the ZBA for final determination of whether or not Mr. Gavlak's operation constitutes a legal, nonconforming use for Somers Zoning Regulations." Town of Somers Zoning Board of Appeals Minutes, 2/12/02, at 1 (Exhibit A to Mem. Opp.) (hereinafter "ZBA Minutes").[1]

At that meeting, the ZBA members stated, on the record, that their decision concerning the plaintiffs' nonconforming use claim had to be decided based on the "packet that came back from the courts." Id. at 1-2. In other words, the ZBA Chair appropriately limited the discussion on remand to

---

[1] The plaintiffs submitted minutes from the ZBA's February 12, 2002, March 14, 2002, and April 11, 2002 meetings in support of their Opposition. The defendants do not contest these documents and, instead, rely upon them.

375500

4

the record, without allowing any new evidence or testimony. Id. The ZBA discussed the nonconforming use claim and tabled it on February 12, 2002 and March 14, 2002. At its April 11, 2002 meeting, the Chair read a letter from the ZBA's counsel advising that, "[s]ince the public hearings are closed, no additional testimony or evidence must be taken or considered." ZBA Minutes of 4/11/02 at 2. The ZBA's counsel also advised that:

> I expect that the applicant will request another public hearing. It is my opinion that this request should be denied. **The Board should consider only that evidence contained in the original record**.

Id. at 2 (emphasis added).

Far from picture painted by plaintiffs in their complaint of being denied "any kind of hearing," they were afforded adequate due process and the ZBA acted rationally regarding their nonconforming use claim. After the Supreme Court remand, the ZBA held hearings on February 12, 2002, March 14, 2002 and April 11, 2002, regarding the nonconforming use claim and, based on the advice of counsel, limited its review to the original record. See Undisputed Facts, ¶46. At its April 11, 2002 meeting, the ZBA members questioned when the plaintiffs' commercial operation was established, and whether that change to commercial use meant that it was not a preexisting nonconforming use. See ZBA Minutes of 4/11/02, at 4. After careful consideration, including a review of the record, the ZBA voted to sustain the cease and desist order. Id. at 9-10.

B.  **Procedural Due Process**

There is one gap in the record that was inadvertently omitted from the defendants' Motion for Summary Judgment and which the plaintiffs' curiously failed to note - the plaintiffs' appeal to the Superior Court of the ZBA's April 11, 2002 vote to sustain the cease and desist order.  See Wood v. Somers, No. CV-02-0078555 (a copy of the Case Detail from the Connecticut Judicial Website is attached hereto as Exhibit B).[2]  The public record from the plaintiffs' most recent zoning appeal reflects that it was filed on or about May 3, 2002 (following the ZBA's April 11, 2002 vote to sustain the cease and desist order) and was resolved by judgment on or about April 8, 2003 (preceding the ZBA's July 10, 2003 rescission of the cease and desist order).

In the plaintiffs' first appeal to the Superior Court concerning the cease and desist order, Connecticut Superior Court Judge Robert F. Stengel concluded that the plaintiffs failed to meet their burden to show a nonconforming use.  Wood, 1999 Conn. Super. LEXIS 2923, at 4.  On July 10, 2003, following the plaintiffs' second appeal, the ZBA rescinded the cease and desist order.  Undisputed Facts, ¶47.  Contrary to the plaintiffs' argument, the defendants have not stipulated that the plaintiffs "had a legal prior nonconforming use of the property."  Mem. Opp. at 5.  Rather, after

---

[2]  The substance of the plaintiffs' 2002 zoning appeal is not relevant; however, the timing of when it was filed (on or about May 3, 2002) and concluded (April 8, 2003) is pertinent to show why the ZBA took no action regarding the plaintiffs' nonconforming use claim between its April 11, 2002 and July 10, 2003 meetings.  Since the plaintiffs' most recent zoning appeal is a public record, the filing of which is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, the Court may take judicial notice of the dates it was filed and concluded. See Rule 201(b) of the Federal Rules of Evidence.

two zoning appeals, and after careful consideration of the record, including direction from its counsel, the ZBA ultimately rescinded the cease and desist order, which they never enforced in the first place. Undisputed Facts, ¶¶27-30, 47.

As evidenced by Judge Stengel's decision in the plaintiffs' first zoning appeal, the plaintiffs did not have a clear entitlement to be considered a nonconforming use. Wood, 1999 Conn. Super. LEXIS 2932 at 4. Instead, the plaintiffs' argument that they were "water farmers," muddied an already murky issue, and led to an initial determination that the plaintiffs were not engaged in a pre-existing nonconforming use. The minutes of the February, March and April 2002 ZBA meetings reflect that the members were concerned about whether the plaintiffs' change to a commercial operation altered the use, to the extent that the plaintiffs did not qualify as a nonconforming use. For example, at the April 11, 2002 meeting, Mr. Torres stated as follows:

> MR. TORRES . . . Sometime around 1996, he changed the operation that he was doing and got more sophisticated because he was bottling the water and selling it for consumption. So he had a change of use at that time. And he was asked if he were still trucking water for pools and he said "no more."

ZBA Minutes of 4/11/02, at 4.

On October 29, 1999, Judge Stengel had also found a change in use that precluded the plaintiffs' from enjoying a nonconforming use, although Judge Stengel concluded that the change occurred in 1991. See Wood, 1999 Conn. Super. LEXIS 2932, at 4 ("the use of one of those springs changed in 1991 when it became a commercial activity and the water was transported off-site for sale."). The ZBA cannot be faulted for similarly concluding that the plaintiffs' "water farming"

375500

7

operation was not a pre-existing use under the Town's zoning regulations, especially given the plaintiffs' admitted change in use in 1996.  See Deposition of David Gavlak of 12/19/03, at 33-34, 57 (Exhibit A to Defendants' Motion for Summary Judgment) (hereinafter "Dep. Tr.") (acknowledging that there were no complaints from the neighbors, and no enforcement action by the Town, until "June or July of '96 when the Garelick Farms and Cumberland Farms trucks started coming to haul water."): see also Undisputed Facts, ¶¶11.

While the plaintiffs' lawyer sought to introduce new evidence at the hearing on remand from the Supreme Court, and sought a public hearing, the ZBA's decision to base its ruling on the prior record was rational and was based on the advice of counsel.  ZBA Minutes of 4/11/02, at 2.  Limiting the review of the plaintiffs' nonconforming use claim to the record, and not allowing new evidence, was a principled decision, supported by the record.  The ZBA had a rational basis for handling the appeal in that manner and its conduct cannot be considered arbitrary or irrational.  Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996).   Because the plaintiffs were afforded due process, the defendants are entitled to summary judgment.

**II.    The Plaintiffs Were Not Denied Equal Protection**

The plaintiffs' last claim is that they were denied equal protection in that they were allegedly the victims of disparate treatment "based on a preconceived intent to destroy their spring water business."  Gavlak, 267 F. Supp. 2d at 225.  The plaintiffs' equal protection claim is not supported by the record.  The genesis of this claim is the plaintiffs' allegation that, in November 1989, George

375500

Boisvert purportedly sought to join the plaintiffs' business.  Undisputed Facts, ¶41-43.[3]  After Mr. Gavlak rejected this offer, he proceeded to obtain the necessary permits from the Town to run his business.  Dep. Tr., at 32-33.  In fact, Mr. Gavlak admitted that there was no interference from the Town until after his neighbors complained in June or July of 1996 about the truck traffic generated by the change in his business.  Id. at 33.  He testified as follows:

> Q.  Is it fair to say that between September 1990 and through 1995 you were able to take water from the spring without any interference from the Town?
>
> A.  Yes.  Up until 1996.
>
> Q.  Okay, so it's fair to say that at some point in 1996 was the first time that you had some problem with the town?
>
> A.  In June or July of '96.
>
> Q  Now, can you describe to me what happened at that time, when you first encountered the problem with the town?
>
> A.  When I started selling to Cumberland Farms, a resident on the road called Mrs. Wood and said, "What is going on?"  Mrs. Wood in turn called me and says, "Dave, Roy Slater had called and wants to know what is going on.  And I think you should go down and explain it to him. . ."

Id. at 33-34.

---

[3]  The plaintiffs have also admitted they have no proof that Mr. Boisvert had anything to do with the cease and desist order being issued on December 2, 1996, seven years after this alleged November 1989 discussion and that he was not even employed by the Town when the order was issued. Undisputed Facts, ¶¶43-44.

375500

Plaintiffs have admitted that Mr. Slater, a former friend of Mr. Gavlak, was the first neighbor to complain about the truck traffic generated by the plaintiffs' business. Undisputed Facts, ¶14. Given the gap between the alleged November 1989 discussion with Mr. Boisvert, and the June or July 1996 complaint by Mr. Slater, which prompted the issuance of the cease and desist order, there is no continuing course of conduct claim that that plaintiffs can make to avoid the statute of limitations. Thus, any alleged misconduct by Mr. Boisvert, which couldn't be attributed to the ZBA or the Town in any event, is nonetheless barred by the three year statute of limitations contained in Connecticut General Statutes §52-577. See Gavlak, 267 F.Supp. 2d at 226.

Far from having evidence to support their charge that the ZBA or the Town sought to destroy their business for some improper purpose, the record reflects that complaints about truck traffic filed against Mr. Gavlak by his own friends caused the Town to issue the cease and desist order. Undisputed Facts, ¶¶14-18. The Somers Zoning Commission held a meeting on December 2, 1996 to address these complaints. Although the plaintiffs dispute whether there was a vote for the cease and desist order at that meeting, the minutes reflect such a vote and Mr. Gavlak has testified that it occurred. See Dep. Tr. at 68 (Q. At that end of that meeting there was a motion made to issue a cease and desist order; do you remember that? A. Yes."); see also Exhibit E2 to Defendants' Motion (Minutes of 12/2/96 meeting, at 6) ("Mr. Landry made a motion to issue a cease and desist order . . .").

In sum, there is no evidence from which a reasonable jury could find that the ZBA acted in an arbitrary or irrational manner. Instead, the record supports the limited enforcement action taken by the ZBA, which occurred only after the plaintiffs were afforded adequate due process, including the right to appeal, which the plaintiffs exercised twice to the Superior Court and once to the Connecticut Supreme Court. As the Second Circuit Court of Appeals has held, "[a] zoning board's decision can be considered irrational only when the board acts 'with no legitimate reason for its decision'" Harlen Assocs. v. Vill. of Mineola, 273 F. 3d 494, 500 (2d Cir. 2001). The ZBA in this action has provided ample legitimate reasons for the issuance of the cease and desist and its handling of the case upon remand from the Supreme Court.

### III. Conclusion

For all of the foregoing reasons, the defendants' Motion for Summary Judgment should be granted.

> RESPECTFULLY SUBMITTED,
> DEFENDANTS,
> TOWN OF SOMERS AND
> SOMERS ZONING BOARD OF APPEALS
>
> By: /s/ James N. Tallberg
>     JAMES N. TALLBERG, ESQ.
>     Fed. Bar No. ct17849
>     Updike, Kelly & Spellacy, P.C.
>     One State Street, P.O. Box 231277
>     Hartford, CT 06123-1277
>     Tel. (860) 548-2600
>     jtallberg@uks.com

## CERTIFICATION

I hereby certify that a copy of the foregoing has been sent via U.S. Mail, postage prepaid, to the following counsel of record, this 5th day of October 2004:

John R. Williams, Esq.
William & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

                                                  By: /s/ James N. Tallberg
                                                     JAMES N. TALLBERG, ESQ.
                                                     Updike, Kelly & Spellacy, P.C.