UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DAVID GAVLAK and HILLSIDE SPRINGS FARM, INC., Plaintiffs, | : | CIVIL ACTION NO. 3:02-CV-1410 (JCH) |
| v. | : | |
| TOWN OF SOMERS and SOMERS ZONING BOARD OF APPEALS, Defendants. | : | JULY 29, 2005 |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 26]**

The plaintiffs, David Gavlak and Hillside Springs Farm, Inc., initiated this action in this court against the Town of Somers. [Dkt. No. 1] The plaintiffs assert multiple causes of action all relating to the operation of a spring water business in Somers, Connecticut. On September 1, 2004, the defendants filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure [Dkt. No. 26].

## I. STANDARD OF REVIEW

In a motion for summary judgement, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). The burden of showing that no genuine factual dispute exists rests upon the moving party. Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial,"

Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgement is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## II. FACTS

For the purposes of the instant motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the plaintiffs where the plaintiffs provide evidence to support their allegations. Plaintiff Gavlak is one of the principals of Hillside Springs Farm, Inc ("Hillside"). Since 1991, Hillside has leased thirty-three acres of land, located in an A-1 zoning district in Somers, Connecticut, from Bruce Wood. The land is known as Wood Farm. The Somers Town Code specifically permits farms, single-family detached dwellings, two-unit multifamily dwellings, and utility lines in A-1 zones. Wood Farm contains four natural springs. The plaintiffs collect water from the springs with pipes. The water is loaded onto tanker trucks which transport the water to bottling plants and other customers of Hillside. Plaintiffs have sold water for the purposes of human consumption, filing residential water wells, and filling swimming pools over many years.

In early November of 1989, George Boisvert approached Gavlak and offered to invest $50,000 to become a partner in the spring water business. Gavlak refused the offer. At the time, Boisvert was zoning officer for the Town of Somers. He has not served in that capacity since 1995. In 1991, the Town amended its regulations to make all uses of real property not expressly permitted to be prohibited.

In the summer of 1996, three families neighboring Wood Farm began complaining to the town with regard to the plaintiffs' collection and transportation of water. Following a Zoning Commission meeting on September 3, 1996, where neighbors complained about truck traffic, the Commission's Chairman, Lee Hall, wrote a memorandum to First Selectman Robert Percoski addressing certain traffic concerns on September 9, 1996. Three months later, at a Zoning Commission meeting, some residents spoke in favor of the plaintiffs' water collection activities and others spoke against it. The Commission issued a cease and desist order against the plaintiffs on December 30, 1996. While the parties agree that the order was not enforced, the plaintiffs argue that entry of the cease and desist order resulted in injury to them because the publicity associated with the order adversely affected their business. Plaintiffs estimate their loss to be nearly five million dollars. Plaintiffs appealed the cease and desist order to the Zoning Board of Appeals. They claimed that their use of the property was permitted as agriculture and/or farming and, in the alternative, that the use was a legal, prior, nonconforming use as water collection from the springs predated the relevant zoning regulations.

On April 10, 1997, the Board held a public hearing at which plaintiffs were heard. The cease and desist order was affirmed on May 8, 1997 by a decision which did not

consider the plaintiffs' nonconforming use argument. On appeal to the state trial court, the plaintiffs again lost. The trial court upheld the board's decision and further found that the water collection did not constitute a legal nonconforming use. The plaintiffs appealed the trial court decision. The appeal was heard by the Connecticut Supreme Court. Finding that water collection did not constitute an agricultural use, the Supreme Court affirmed the trial court's decision in part but found that because the Zoning Board of Appeals was "required, in the first instance, to determine whether [the plaintiffs'] use constitutes a legal nonconforming use . . . that the trial court improperly considered that issue." Wood v. Zoning Bd. of Appeals, 258 Conn. 691, 696 (2001). Connecticut law provides that whether the extension of the plaintiff's nonconforming use was legal constituted a question of fact and also that a court reviewing an agency determination may not make its own factual determinations. Id. at 708 (quoting Farrington v. Zoning Board of Appeals, 177 Conn. 186, 190 (1979)). Therefore, the Connecticut Supreme Court remanded to the trial court with instructions for the trial court to remand the case to the Zoning Board of Appeals "for a determination limited to the issue of whether Hillside's use of the subject property for the collection, storage, and transportation of spring water constitutes a legal nonconforming use." Id. at 709.

The Zoning Board of Appeals addressed the issue of nonconforming use on February 12, 2002, March 14, 2002, April 11, 2002, and July 10, 2003. The Zoning Board of Appeals overruled the cease and desist order on July 10, 2003.

## III. ANALYSIS

### A. Due Process

The plaintiffs claim that the defendants deprived him of his property interest in a prior nonconforming use without due process of law, in violation of the Fourteenth Amendment. Gavlak claims violations of both procedural and substantive due process rights. In order to prevail on this claim, Gavlak must prove "the existence of a federally protectable property right and the denial of such a right in the absence of either procedural or substantive due process." Natale v. Town of Ridgefield,170 F.3d 258, 262 (2d Cir. 1999).

State action is in violation of procedural due process requirements where it takes place without notice and an opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319, 333 (1976). "For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outraegeous.'" Natale, 170 F.3d at 262. "A decision can only be considered arbitrary for federal constitutional purposes where . . . it had no basis in fact." Harlen Assocs. v. Village of Mineola, 273 F.3d 494, 501 (2d Cir. 2001). "Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale, 170 F.3d at 263. "Even if the [town's] action were based solely on community opposition, such action would not be constitutionally arbitrary if the opposition is 'based on legitimate state interests such as, inter alia, traffic, safety, crime, community pride, or noise.'" Harlen Assocs., 273 F.3d at 501 (quoting Midnight Sessions, Ltd. v. City of Philadelphia, 945 F.2d 667, 685 (3d Cir. 1991)).

Before considering whether due process was lacking in the instant case, the court must first consider whether the defendants deprived the plaintiffs of a property

right. "In almost all cases, the existence of a federally protectable property right is an issue of law for the court." Natale, 170 F.3d at 263. Whether a protectable property interest exists is a question of state law. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Where the relevant facts are not in dispute, the court itself must consider whether the plaintiff "has a clear entitlement to the [alleged property interest] under state law." Id. Where there is any uncertainty as to the plaintiff's entitlement, the court will not find a federally protectable property right. Id. ("There is no reason . . . to restrict the 'uncertainty' that will preclude existence of a federally protectable property interest to the uncertainty that inheres in an exercise of discretion. Uncertainty as to the meaning of applicable law also suffices.")

This court (Goettel, J.) has previously determined that "[a]t its most fundamental level, a nonconforming use is a vested property right in the State of Connecticut." Gavlak v. Town of Somers, 267 F. Supp. 2d 214, 221 (D.Conn. 2003). The court also previously concluded that, as of the pleading stage of these proceedings, the plaintiffs had alleged a nonconforming use but had not yet proven that such use was legally established. Id. at 222-23. In the instant case, because, as the parties agree, the cease and desist order was never enforced, the plaintiffs were never deprived of a protectable property interest. Whether or not they were legally entitled to engage in the water operations, they were never prevented from doing so. Because the plaintiffs were never subjected to a deprivation of their ability to engage in the nonconforming use, that cannot be the property interest at issue.

The court considers, alternatively, that the entry of the cease and desist order, despite that order never having been enforced, constituted a deprivation of a

protectable property interest. In other words, did the plaintiffs have a protectable property interest in being free from the entry of a cease and desist order, which the parties agree was never enforced? A recent case in this district considers case law addressing cease and desist orders and focuses on the effect of such an order on the plaintiff's ability to engage in otherwise lawful conduct. Goodspeed Airport, LLC v. East Haddam Land Trust, Inc., 2005 WL 1403822, *3 (D. Conn. 2005) ("mere issuance of a cease and desist order, without a showing of any effect . . . " does not constitute violation of a constitutional right). Connecticut law expressly anticipates the appeal of zoning decisions, both in the administrative and judicial processes. Conn. Gen. Stat. §§ 8-7, 8-8, 8-9. It also expressly anticipates the entry of a zoning order during the pendency of an appeal. Conn. Gen. Stat. § 8-7. Having never been subjected to the loss of a property right, the plaintiffs cannot maintain a claim for violations of due process rights, whether substantive or procedural.[1,2]

---

[1]The court has found one case that may be read to support a contrary result. In Zaintz v. City of Albuquerque, 739 F. Supp. 1462, 1468 (D.N.M. 1990), the court found that a plaintiff "had a protected property interest in the commercial use of their property on an equal basis with others engaged in their type of business." The court concluded, therefore, that a plaintiff forced to apply for a permit for a particular land use, where the activity was not restricted during the pendency of the permit application and where the permit was ultimately granted, may have been deprived of a property interest. The interest invaded, however, was not the ability to use one's land, which ability was not threatened, but the ability to compete with simialr businesses, which businesses were not subject to an arbitrary requirement that a property owner apply for a permit. Id. That case, therefore, is distinguishable from the instant one.

[2]An alternate basis for the court's ruling on the plaintiffs' procedural due process claim is the undisputed fact that the plaintiffs had both notice and the opportunity to be heard when the defendants first issued and affirmed the cease and desist order and, later, when the defendants overruled the cease and desist order. With respect to the plaintiffs' substantive due process claim, there is ample evidence that while the cease and desist order may have been illegal, its issuance was not irrational nor did it constitute a gross abuse of governmental authority. Were the court to find that the plaintiffs were subject to deprivation of a property right, it could not find that such deprivation occurred without due process of law.

**B. Equal Protection**

"[W]here the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment," she states a claim that her rights pursuant to the Equal Protection Clause have been violated. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). The Supreme Court has held that the Equal Protection Clause protects individuals from "intentional and arbitrary discrimination." Id. (quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923)). "To prevail on a claim of selective enforcement, plaintiffs in this Circuit traditionally have been required to show both (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations . . . ." Harlen Assocs., 273 F.3d at 499 (internal quotation omitted).

The Second Circuit recently clarified the first prong of this test. In order for a plaintiff in a "class of one" equal protection case to demonstrate treatment different from that experienced by similarly situated individuals, he must "show that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005).

With respect to the second prong of the test, "malicious or bad faith intent to injure a person" is one such impermissible consideration. Id. That there was "no rational basis for the difference in treatment," Bizzarro v. Miranda, 394 F.3d 82, 86 (2d

Cir. 2005), may also satisfy the second prong of a "class of one" equal protection claim.[3] Whether a governmental action is irrational or arbitrary turns not on whether the action was correct but focuses instead "on whether the [governmental] official's conduct was rationally related to the accomplishment of the work of the agency." Id. at 88-89.

In the instant case, the plaintiffs have not alleged that any similarly situated persons exist. The plaintiffs claim that because they are "the only water company in town," Pl.'s Local Rule 56 Stmt. at 6, ¶ 10, they cannot identify similarly situated individuals. While the plaintiffs alleged "disparate treatment compared to other businesses in the town and compared to other applicants for zoning permits," Compl. ¶ 23, they have come forward with no evidence to support this claim so as to create a material question of fact. Gavlak's testified at his deposition that, "It seems like one company will get treated different than the other one." Gavlak Depo. [Dkt. No. 27, Ex. A] at 138. This statement does not suffice to provide evidence of differential treatment under the test enunciated by Neilson, 409 F.3d at 105. Even if the finder of fact were to credit Gavlak's conclusory testimony that other businesses were treated differently, the plaintiffs provide no evidence to allow the finder of fact to conclude that those businesses were similarly situated to them.

**C. Municipal Liability**

---

[3] It remains unclear whether a plaintiff must prove that an irrational or arbitrary decision against him was motivated by animus or malice in order to prove that his right to equal protection was violated. See Bizzarro, 394 F.3d at 88; Harlen Assocs., 273 F.3d at 500. The plaintiffs here claim that malice can be inferred from the fact that George Boisvert, a former Somers zoning official, approached Gavlak between 1989 and 1991 seeking to become a silent equity partner in the water operation and that Gavlak refused the offer. Boisvert ceased being a zoning official in 1994 or 1995. This court need not reach this question as there is no evidence that the plaintiffs were treated differently than similarly situated individuals, and the court does not reach the second prong of the "class of one" test.

Because Gavlak's claims against the ZBA cannot survive the motion for summary judgment, the court need not consider the question of whether the Town of Somers may be liable for the ZBA's actions.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 29th day of July, 2005.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge